AO 106 (Rev. 04/10) Application for a Search Warrant

FILED ___ ENTERED
___ LODGED ___ RECEIVED

SEP 20 2012

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
(Briefly describe the property to be searched )
or identify the person by name and address) ) Case No. MJ12-497
)
Subject Parcel )
Delivery Confirmation Number EI231703565US )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One (1) United States Postal Service (USPS) Express Mail parcel #EI231703565US, addressed to "Terrance Williams, 1873 E. Larned, Det, Mich 48207", as more fully desbribed in Attachment B.

located in the ___Western___ District of ___Washington___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B for a list of items to be seized.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 841(a)(1) | Distribution/possession with intent to distribute, controlled substances |
| Title 21, U.S.C. § 843(b) | Unlawful use of a communication facility, including the U.S. Mail |

The application is based on these facts:

See Affidavit of Postal Inspector Marcel Korvela

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

MARCEL KORVELA, Postal Inspector
Printed name and title

Sworn to before me and signed in my presence.

Date: Sept 20, 2012

_____
Judge's signature

City and state: Seattle, Washington

Mary Alice Thieler, United States Magistrate Judge
Printed name and title

STATE OF WASHINGTON    )
                       )  ss
COUNTY OF KING         )

## AFFIDAVIT

I, MARCEL KORVELA, being first duly sworn on oath, deposes and says:

### BACKGROUND

1. **Affiant Background.** I am a Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed since January 2007. I am currently assigned to the USPIS Seattle Division, Multi-Functional Team. I am sworn and empowered to investigate criminal activity involving the US Postal Service (USPS). During the twelve (12) week Basic Inspector Training academy in Potomac, MD, and through additional training and experience in the field, I have extensive knowledge in US Mail investigations, including illegal narcotics investigations. I have experience in conducting Mail Fraud, Revenue Fraud, Mail Theft, Identity Theft, Violent Crimes, Security, Child Exploitation, Dangerous Mail, and Prohibited Mail/Illegal Narcotics, etc. I have conducted numerous drug investigations, and also have participated in drug interdictions in San Juan, PR and Los Angeles, CA. In addition to my experience as a Postal Inspector, I have a Bachelor's Degree from Macalester College in St. Paul, MN.

2. **Duties, Training & Experience.** As part of my duties, I investigate the use of the U.S. mails to illegally mail and receive controlled substances, the proceeds of drug trafficking, as well as other instrumentalities associated with drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substances), and 843(b) (unlawful use of a communication facility, including the U.S. mails, to

AFFIDAVIT OF MARCEL A. KORVELA -- 1

facilitate the distribution of a controlled substance). My training and experience includes identifying parcels with characteristics indicative of criminal activity. During the course of my employment with the USPIS, I have participated in criminal investigations involving suspicious parcels and controlled substances.

3. The information contained in this affidavit is based upon knowledge I gained from my investigation, my personal observations, my training and experience, and investigation by other Inspectors, agents, and officers. Because the purpose of this affidavit is limited to setting forth probable cause to search the subject parcel, I have not set forth every fact of which I am aware pertaining to the investigation.

4. From my training and experience, I am aware that the United States Postal Service (USPS) mail system is often used to transport controlled substances and/or the proceeds from the sales of controlled substances throughout the United States. I have learned and observed that sometimes drug traffickers put controlled substances and proceeds in the same package. I also know that drug traffickers prefer mail/delivery services such as Express Mail and Priority Mail Delivery Confirmation because of the reliability of these services as well as the ability to track the article's progress to the intended delivery point. When a drug trafficker learns that a mailed article has not arrived as scheduled, he/she becomes suspicious of any delayed attempt to deliver the item.

5. In addition, I am aware that the USPS Express Mail service was custom-designed to fit the needs of businesses by providing overnight delivery for time sensitive materials. Business mailings often contain typewritten labels, are in flat cardboard mailers, and usually weigh less than eight (8) ounces. In addition, businesses using corporate charge accounts and/or

AFFIDAVIT OF MARCEL A. KORVELA -- 2

print their account number on the Express Mail label in order to expedite transactions with USPS.

6.  Based on my training and experience concerning the use of Express Mail for the transportation of controlled substances and/or the proceeds from the sales of controlled substances, I am aware these packages usually contain some or all of the following characteristics (which are different than characteristics of packages being sent by legitimate businesses):

    a.  Unlike typical Express Mail business mailings which usually have typed labels, packages containing controlled substances and/or proceeds often have handwritten address information. In addition, the address information often contains misspelled words or incomplete/incorrect addresses. This is done in an effort to help conceal the identities of the individuals involved.

    b.  The handwritten label on Express Mail packages containing controlled substances and/or proceeds does not contain a business account number and/or credit card number. This is an indication that the sender likely paid cash. A credit card or business account number would more likely enable law enforcement officers to connect the package to identifiable individuals.

    c.  Express Mail packages containing controlled substances and/or proceeds often stand out from typical business mailings as they do not bear any advertising on the mailing container/box, and are usually being mailed from one individual to another.

    d.  The sender and/or recipient addresses on Express Mail packages containing controlled substances and/or proceeds often either are fictitious, are persons not known to postal personnel familiar with the addresses listed.

    e.  The zip codes for the sender addresses on Express Mail packages containing controlled substances and/or proceeds is different from the zip codes of the post offices from where the parcels were mailed.

    f.  Express Mail packages containing controlled substances and/or proceeds are heavily taped with tape on the seams of the parcel, in an effort to conceal scent.

    g.  Express Mail packages containing controlled substances and/or proceeds include a waiver of signature. As a general matter, Express Mailings require a signature confirming receipt. Therefore, if a sender does not want a confirmation signature, he/she must affirmatively waive this requirement but checking a box.

AFFIDAVIT OF MARCEL A. KORVELA -- 3

7. Inspectors who encounter a package with any or all of the above characteristics often further scrutinize the package by, among other ways, address verifications and use of a trained narcotic-detecting canine examination.

## ITEM TO BE SEARCHED

8. This affidavit is made in support of an application for a search warrant for one USPS Express Mail parcel, hereinafter referred to as "SUBJECT PARCEL." This parcel is believed to contain controlled substances or proceeds from the sale of controlled substances. The SUBJECT PARCEL is further described as follows: One USPS Express Mail parcel addressed to "Terrance Williams, 1873 E. Larned, Det. Mich 48207," with a return address of "Ronald Williams, 16252 Lawton, Det. Mich 48221." This Express Mail parcel measures approximately 15 ½" x 12 ½" x 3" with a weight of approximately 14.6 ounces. The SUBJECT PARCEL is postmarked for September 18, 2012, from ZIP code 98043 in Mountlake Terrace, WA and carries $33.20 in postage. The delivery confirmation number is EI231703565US. This description is repeated in Attachment A.

## ITEMS TO BE SEIZED

9. The application requests that law enforcement officers and agents be authorized to seize the following from the SUBJECT PARCEL, which constitute the fruits, instrumentalities, and evidence of mailing and distribution of controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of a controlled substance):

    a. Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, oxycodone, and Oxycontin;

AFFIDAVIT OF MARCEL A. KORVELA -- 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

b. Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

c. Controlled substance-related paraphernalia;

d. Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

e. Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

f. Fingerprints and/or handwriting, to identify who handled and/or mailed the package.

This list is repeated in Attachment B.

## THE INVESTIGATION

10. On September 18, 2012, Corey Stairs, Task Force Officer (TFO), in conjunction with the USPIS, conducted an Express Mail interdiction at the United States Postal Service mail facility located at 10700 27th Avenue South, Tukwila, WA. The emphasis for the interdiction was targeting outbound Express Mail Parcels and Envelopes for monetary proceeds derived from illegal drug trafficking activity.

11. On September 18, 2012, at approximately 5:30 PM, Postal Inspectors observed an outbound standard Express Mail Package with a handwritten label being shipped from Mountlake Terrace, WA to Detroit, MI.

12. Postal Inspectors know from training and experience that USPS Express Mail envelopes and parcels are often used to ship controlled substances and/or U.S. Currency. In addition, Postal Inspectors know that the Seattle area is a destination city for marijuana and other narcotics shipped to other parts of the country and that proceeds from narcotics are often shipped from the Seattle area using USPS mail. Furthermore, Postal Inspectors know that it is common for narcotics traffickers to utilize Express Mail to ensure timely delivery and limit the potential

AFFIDAVIT OF MARCEL A. KORVELA -- 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

for exposure to law enforcement personnel. Postal Inspectors also know that it is common for narcotics traffickers to use hand written labels and provide false information or incomplete information on the labels in an effort to protect the sender or recipient from law enforcement action.

13. Postal Inspectors noticed on the parcel that the sender waived the signature requirement sent from "Ronald Williams, 16252 Lawton, Det, Mich 48221" to "Terrance Williams, 1873 E. Larned, Det, Mich 48207." Postal Inspectors know it is common for individuals involved in shipping narcotics to provide false names or partial names on the shipping label in an effort to avoid law enforcement detection and protect their true identity.

14. On September 18, 2012, Postal Inspectors researched the sender's name and address listed on the SUBJECT PARCEL by utilizing USPS and law enforcement databases. According to Accurint, a law enforcement database, Postal Inspectors learned that "16252 Lawton, Det, Mich 48221" cannot be associated with the name "Ronald Williams." According to Accurint, recipient's address "1873 E. Larned, Det, Mich 48207" cannot be associated with the name "Terrance Williams." Additionally, the return address ZIP is out-of-state (MI), whereas the parcel was mailed out of the Mountlake Terrace, WA Post Office.

15. Based upon this information, on September 18, 2012, at approximately 5:40 PM, TFO Stairs applied "Caro", a narcotic-detection dog, to the subject parcel. TFO Stairs's affidavit describing Caro's training and qualifications is attached to this affidavit. TFO Jeff McClane placed the parcel in an open office area with approximately 4 other "control" parcels. The parcels were arranged along the perimeter of the walls. TFO Stairs applied his narcotics detection canine Caro to each of the parcels in the room. TFO Stairs observed Caro sit, indicating the positive odor of narcotics emitting from the parcel. Further information about the

narcotics detection canine's qualifications and this investigation are provided in the attached affidavit of TFO Stairs, incorporated as Attachment C.

16. On September 18, 2012, inspectors and TFOs presented ten (10) total parcels in which Caro positively indicated to the presence of narcotics. Inspectors and TFOs were able to open four (4) of those parcels via addressee and/or sender consent. Two (2) of those four (4) parcels contained suspected narcotics (heroin and oxycontin, respectively), while one (1) contained checks associated with a known drug residence. The fourth parcel contained a compact disk (CD). The remaining six (6) parcels in which Caro positively indicated to the presence of narcotics remained unopened.

AFFIDAVIT OF MARCEL A. KORVELA -- 7

## CONCLUSION

17. Based on the facts set forth in this Affidavit, as well as the affidavit of TFO Stairs, I believe there is probable cause to conclude that the SUBJECT PARCEL contains controlled substances, currency, documents, or other evidence, more fully identified in Attachment B, that relates to the mailing and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substances) and 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of a controlled substance).

Marcel A. Korvela
Postal Inspector, US Postal Inspection Service

SUBSCRIBED AND SWORN to before me this 20th day of September, 2012.

MARY ALICE THEILER
United States Magistrate Judge

AFFIDAVIT OF MARCEL A. KORVELA -- 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**Attachment A**

Parcel to be searched

United States Postal Service (USPS) Express Mail parcel # EI231703565US, addressed to "Terrance Williams, 1873 E. Larned, Det, Mich 48207" with a return address of "Ronald Williams, 16252 Lawton, Det, Mich 48221" (hereinafter referred to as "SUBJECT PARCEL"). The SUBJECT PARCEL is an Express Mail parcel measuring approximately 15 ½" x 12 1/2" x 3" and has a weight of approximately 14.6 ounces. This parcel is postmarked for September 18, 2012, from ZIP code 98043 in Mountlake, WA and carries $33.20 in postage.

**Attachment B**

a.  Controlled substances, including, but not limited to, cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, methadone, oxycodone, and Oxycontin;

b.  Monetary instruments, including but not limited to, currency, money orders, bank checks, or gift cards;

c.  Controlled substance-related paraphernalia;

d.  Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

e.  Notes, letters and other items which communicate information identifying the sender and/or recipient or pertaining to the contents of the mailing; and

f.  Fingerprints and/or handwriting, to identify who handled and/or mailed the package.

<u>Attachment C</u>

**DEA HIDTA Task Force Group D-22**
**Valley narcotics Enforcement Team**

Case No. GFRE-12-9227

Task Force Officer Cory Stairs
September 18, 2012

---

DETAILS

On September 18, 2012, I was working narcotics interdiction in conjunction with the US Postal Inspection Service at the United States Postal Service mail facility located at 10700 27th Avenue South, Tukwila, WA. The emphasis was targeting outbound Express Mail parcels intended for distribution outside of the Seattle Metropolitan.

Narcotics canine "Caro" was used to sniff packages that were deemed suspicious by investigators. This particular "subject" parcel was intended to be delivered to Detroit, Michigan and listed a tracking number of EI 231703565 US.

DEA Task Force Officer Jeff McClane placed the "subject" parcel in an open office area with four additional "control" parcels out of view of "Caro" and me. The parcels were arranged along the perimeter of the wall so "Caro" could sniff each parcel for the odor of narcotics. Caro sniffed along the seams of each of the parcels and "sat" after sniffing the 2nd package in the drug package lineup. When "Caro" sits, it is an indication to me that he could smell the odor of narcotics.

Caro was rewarded with a ball and concluded the search.

TRAINING/EXPERIENCE

I am a commissioned Police Officer for the Port of Seattle Police Department, and have been employed since October 7, 2000. I am currently assigned as a Task Force Officer of the United States Drug Enforcement Administration (DEA), as an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18. My duties include investigating federal and state narcotics violations within the jurisdiction of the Port of Seattle, the County of King, State of Washington, and the United States.

I am a graduate of the Basic Police Academy provided by Washington State Criminal Justice Training Commission. I have received over 200 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances. I have completed the two week basic narcotics investigations course with the Drug Enforcement Administration and I have received nationally recognized narcotics training provided by the International Narcotics Interdiction Association (INIA) as well as the California Narcotics Officers Association (CNOA).

By virtue of my assignment with the DEA, I am authorized to conduct investigations into violations of the Controlled Substances Act. In doing so, I have conducted a variety of investigations into violations ranging from simple possession of narcotics to complex international conspiracies. Because of this experience and training, I am familiar with common methods of investigating drug trafficking organizations, and have become familiar with the methods of

operation of drug traffickers, including, but not limited to, their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs; their use of cellular telephones, telephone pagers, emails, and other electronic means of communication to further their narcotics trafficking activities; and their use of numerical codes, code words, counter-surveillance, and other methods of avoiding detection by law enforcement. I am also familiar with the various methods of packaging, delivering, transferring, laundering, and expatriating drug proceeds.

I have participated in the execution of numerous narcotics search warrants. Most commonly, these warrants authorize the search of locations ranging from the residences of drug traffickers and their coconspirator/associates, to locations used to manufacture, distribute and hide narcotics and drug proceeds. Materials searched for and often recovered in these locations include packaging materials, manufacturing items, scales, weapons, documents and papers reflecting the distribution of controlled substances and the identity of coconspirator associates, and papers evidencing the receipt, investment, and concealment of proceeds derived from the distribution of controlled substances.

CANINE QUALIFICATIONS

I'm currently assigned to the DEA HIDTA Taskforce and handle a narcotics canine as a collateral duty. In November 2010, I completed the state mandated requirement of 200 hours of canine narcotics specific training, which fulfilled the Washington Administrative Code (W.A.C.) 139-05-915 for the Narcotic Dog Handler (General Detection). My training consisted of approximately 250 hours of training in the classroom as well as practical applications, which covered all areas specified by W.A.C. On November 14, 2010 Canine "Caro" and I were certified as a team by the Washington State Police Canine Association. The WSPCA is an organization with voluntary membership to improve training and effectiveness of canine teams statewide. The WSPCA certification is also voluntary with more stringent standards than the state requirement. The substances trained on by the team are cocaine, heroin, methamphetamine and marijuana/hashish. "Caro" is a passive alert canine, which is a manner most of the canines in the program are taught to alert. "Caro" is trained to give a "sit response" after having located the specific location the narcotics odor is emitting from. The handler is trained to recognize the changes of behavior the canine exhibits when it begins to detect the odor of narcotics. The odor can be emitting from the controlled substance itself, or it can be absorbed into items such as currency, clothing, containers, packaging material, etc. Narcotic smelling canines such as "Caro" have an inherently keen sense of smell, and will continue to alert on the container or item depending on the length of exposure to the controlled substance, and the amount of ventilation the item is exposed to.

Caro's reward for finding narcotics / narcotic related items is a rubber ball. Caro and I continue to train on a regular basis to maintain our proficiency as a team.
On-going training includes:
- Training in all areas of interdiction, such as vehicles, boats, truck tractor and trailers, schools, currency, parcels and mail, airports and airplanes, bus and bus depots, storage units, residences, trains and train depots, prisons, motels, apartments, etc.
- Training on various quantities of controlled substances, ranging from grams to ounces, and pounds when available.
- Training on novel odors, such as odors that are distracting, masking, or new.
- Training on controlled negative (blank) testing, in which all objects or locations have no contraband present.
- Extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, etc.

I maintain both training logs and field activity/application reports. Both are available for review upon request. At this time the team has found over 847 narcotics substance training aids and 67 applications in the field resulting in the seizure of narcotics and currency. Canine "Caro" maintains approximately a 92 percent rate of accuracy in field applications.

I certify or swear under the penalty of perjury the foregoing statement is true and correct.

Detective Cory W. Stairs
DEA Task Force
Badge #10253 September 18, 2012

*[signature: Cory Stairs]*